UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MONICA HARMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:04-CV-348 |
| ) | |
| LEGGETT & PLATT, INCORPORATED ) | |
| d/b/a NO-SAG, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

### I. INTRODUCTION

This case centers around two management-level personnel, one male, one female, who were fired at the same time because together, according to the employer, they created a dysfunctional workplace. (Def.'s Br. in Supp. of its Mot. for Summ. J. 13.) The female, Monica Harmon ("Harmon"), claims her firing by Leggett & Platt, Incorporated d/b/a No-Sag ("Leggett") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because in her view she was fired her due to her gender.[1] (Compl. ¶ 4.) The factual contention is a bit unusual, however, as she contends that Leggett would not have fired her, but only did so because it wished to cover up its discriminatory animus towards the male, Blain Hite ("Hite"). (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 10.)

Harmon also brings a claim under the Equal Pay Act of 1963, 29 U.S.C. § 201 *et seq.*, alleging that somewhere in one of Leggett's many facilities there must be a male doing the same

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

job she was doing but for more pay. (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 11-12.)

Leggett moves for summary judgment on both the Title VII and Equal Pay Act claims, (Docket # 17) and because Harmon has failed to provide sufficient evidence to support either one, the motion will be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Leggett employed Harmon as the Personnel Manager for its No-Sag division from September 9, 1993, until her termination on March 29, 2004. (Aff. of Bill Schmitt ¶ 3; Dep. of Monica Harmon 29.) During her tenure, Harmon consistently received annual merit-based increases in her salary and incentive bonuses. (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., Ex. H; Harmon Dep. 45-48.) Harmon's duties included recruiting and interviewing to fill vacant positions; scheduling meetings between management and employees to resolve grievances; supervising payroll functions; coordinating employee training programs; monitoring and implementing policies concerning wages, hours, and working conditions; and overseeing the facility in the absence of the Branch Manager and Manufacturing Manager. (Schmitt Aff. ¶ 4; Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 2.)

Leggett hired Hite on September 7, 1993, as an industrial engineer at No-Sag. (Schmitt Aff. ¶ 7; Harmon Dep. 32.) Hite was eventually transferred to the position of Facilitator and then promoted to Manufacturing Manager, a position placing him second in command at No-Sag under Bill Schmitt ("Schmitt"), the Branch Manager. (Harmon Dep. 33.) Hite's duties as Manufacturing Manager included overseeing maintenance, tool room, and purchasing;

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Harmon, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

2

communicating with vendors and suppliers; directing and managing the safety activities of the facility; and maintaining the engineering files. (Schmitt Aff. ¶ 9.) Unlike Harmon's position, Hite's position required training, education, and experience in technical areas such as manufacturing and engineering. (Schmitt Aff. ¶ 10.)

At some point, Harmon and Hite began dating, even though they were married to other people. (Harmon Dep. 57-58; Schmitt Aff. ¶ 11.) In June 1998, they failed to report for a day of work because they had gone to a Chicago Bulls basketball game the day before. (Harmon Dep. 62-63; Schmitt Aff. ¶ 13) This led Schmitt to write both of them a memo of admonishment. (Schmitt Aff. ¶ 13-14.) Harmon, in particular, exhibited a rather strong response to Schmitt's justified, but minor scolding. (Harmon Dep., Ex. K.)

In any event, in the fall of 2003, Schmitt was in line for a promotion to China, and Harmon and Hite discussed the possibility that with Schmitt gone, Hite would likely be promoted; ultimately, however, Schmitt did not receive the promotion, ostensibly because he was unable to obtain a visa. (Harmon Dep. 66-67; Schmitt Aff. ¶ 16.) Schmitt's misfortune allegedly soured his attitude towards subordinates, including Harmon and Hite. (Harmon Dep. 69-71, 74, 76-77.) In response to some employee complaints about Schmitt, Harmon called Jason Gorham ("Gorham") at Leggett's corporate human resources department to report that Schmitt was "negative, bitter, and unapproachable." (Harmon Dep. 74.) Gorham never called back. (Harmon Dep. 74.)

Her report, nevertheless, apparently sparked a response; in December 2003, Jeff Hughey ("Hughey") from Leggett's corporate office conducted a three-day investigation into management operations at No-Sag, meeting with Harmon, Hite, and Schmitt. (Harmon Dep. 78-

3

79; Schmitt Aff. ¶ 19; Aff. of Jeffrey Hughey ¶ 3, 4.) Harmon initially refused to meet with Hughey, claiming he was on a "witch hunt," but she later acquiesced, subsequently telling him that she was actively seeking other employment. (Harmon Dep. 79-80, 84-85; Hughey Aff. ¶ 5.) Harmon eventually cut the meeting short so she could call an attorney. (Harmon Dep. 80; Hughey Aff. ¶ 5.) Hughey's investigation left him with the impression that Harmon and Hite thought they were better suited to run No-Sag than Schmitt, and were subtly conspiring to undermine him. (Harmon Dep. 84; Hughey Aff. ¶ 6.) Hughey's conclusion presumably arose from the fact that both Harmon and Hite used the same "catch phrases" to describe Schmitt's behavior. (Hughey Aff. ¶ 6.) When confronted, Harmon disputed the point, telling Hughey she always worked well with Schmitt, at least until he was denied the promotion, and that he had once told her that he was glad to have Harmon and Hite at No-Sag. (Harmon Dep. 75, 85.)

      Hughey was followed by Annita Bowers ("Bowers"), a company facilitator, sent to No-Sag in January and February 2004 to evaluate the management team. (Harmon Dep. 90; Aff. of Annita Bowers ¶ 3.) During her January visit, she interviewed Schmitt, Harmon, and Hite, as well as many other employees. (Harmon Dep. 90; Bowers Aff. ¶ 3.) On her second visit, Hite and Harmon were on a cruise together. (Harmon Dep. at 93; Bowers Aff. ¶ 4.) After the visits, Bowers drafted a "Recommended Action Plan" urging the firing of Hite, and a meeting with Harmon "to establish stern guidelines for [a] last chance opportunity." (Bowers Aff. ¶ 5, Ex. A.) She observed that "[i]n general, [Harmon's] HR knowledge and interactions with employees are respected" but that "[m]any of the issues around Monica's behaviors revolve around her relationship with [Hite]. . . . Hopefully, removing [Hite] from the office will result in an improvement in her judgment and behaviors[,] . . . [but] there is some risk in allowing [her] to

continue in her current role . . . . " (Bowers Aff. ¶ 5, Ex. A.)

Thereafter, Hughey, Gorham, and Bill Distler ("Distler"), all members of Corporate Human Resources, decided to terminate both Harmon and Hite. (Schmitt Aff. ¶ 22; Hughey Aff. ¶ 9.) On March 29, 2004, Schmitt and Distler met with Harmon and Hite and fired both of them, citing a "dysfuntional staff" as the reason for their termination. (Harmon Dep. 34-35.) Leggett subsequently sent Harmon a letter on April 15, 2004, indicating that although she performed at a "generally satisfactory level," her "serious interpersonal conflicts" with Schmitt. made her "no longer an effective member of the management team." (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., Ex. G.)

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must

affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

### A. Harmon's Claim of Gender Discrimination Fails

Harmon's sex discrimination argument, that Leggett fired her to mask its discriminatory animus against Hite, is somewhat counter-intuitive.[3] Nevertheless, a plaintiff alleging employment discrimination can contest summary judgment by using either the direct or indirect method of proof. *King v. Preferred Technical Group*, 166 F.3d 887, 891-92 (7th Cir. 1999). The direct method requires the plaintiff to produce enough evidence, either direct or circumstantial, *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994), to create a triable issue of whether the adverse employment action had a discriminatory motive. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997). Direct evidence is essentially "an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). In the absence of direct evidence, circumstantial evidence must compose "a convincing mosaic of discrimination against the plaintiff," *Troupe*, 20 F.3d at 737, that "points directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

This circumstantial evidence is of three general types: (1) suspicious timing, ambiguous statements, or behavior toward other employees; (2) evidence that similarly situated employees

---

[3] Harmon's theory is also difficult to follow. She speculates that Leggett fired Hite because he disapproved of Schmitt's homosexual lifestyle and then fired her to avoid any appearance of discrimination that might arise. This assertion lacks factual support in the record. In any event, Harmon never explains how this becomes actionable discrimination against Hite, let alone how firing a *female* employee works as a mask to cover it up.
   Alternatively, Harmon theorizes that Leggett fired Hite because Hite was disabled, as he has narrow angle glaucoma and had suffered a heart attack two years prior to his termination. Harmon provides no evidence, however, that Hite was in any way disabled or was otherwise hindered in the performance of his duties or that Schmitt or Leggett ever perceived him as such. In any event, here too it is difficult to understand how firing a non-disabled female serves to "cover up" any such discriminatory intent.

were treated differently; or (3) evidence that the employee did not deserve termination and that the employer's reason for termination is a pretext for discrimination. *Volovsek v. Wis. Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 689-90 (7th Cir. 2003). The third type is "substantially the same as the evidence required in a . . . *McDonnell Douglas* [pretext inquiry]," *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997), except that "[c]ircumstantial evidence under the direct method . . . must allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus." *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2002).

The indirect method is the well-known *McDonnell Douglas* burden-shifting framework. *E.g.*, *King*, 166 F.3d at 891-92. Here, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). For Title VII claims, the *prima facie* case requires four showings: (1) the plaintiff was a member of a protected class; (2) the plaintiff was meeting the employer's legitimate expectations or was qualified for the job in question; (3) the plaintiff suffered an adverse employment action; and (4) similarly-situated employees who were not members of the plaintiff's protected class were treated more favorably. *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir. 1995); *see also Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 784 (7th Cir. 2004). If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant has done so, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.* at 804.

Harmon concedes that there is no direct evidence of discrimination and only briefly

suggests that circumstantially direct evidence exists, arguing that based on her positive employment record and Schmitt's negative attitude towards subordinates, a trier of fact could find that her termination was a pretext for discrimination. *Volovsek*, 344 F.3d at 69-90. Harmon's evidence, however, if taken as true, at most suggests that perhaps Leggett honestly got it wrong, that Schmitt should have been the one fired, but it still fails to give rise to any inference that points *directly* to a discriminatory reason (i.e., Harmon's gender) for the action taken against her. *Adams*, F.3d at 939.

Therefore, because she does not make out a case under the direct method, Harmon's claim rests upon the *McDonnell Douglas* framework. For purposes of summary judgment, Leggett concedes that Harmon has established the first and third elements of her *prima facie* case of gender discrimination but contends that Harmon's case ultimately fails on the second and fourth elements.

We agree that Harmon fails to establish the second element of her *prima facie* case–that she was meeting the legitimate expectations of her employer.[4] The only evidence of satisfactory performance she produces are "Employee Rate Change Forms" showing she received ten consecutive annual merit pay increases. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. H.) These alone, however, are insufficient to raise a genuine issue of material fact as Harmon was terminated in March 2004, after the friction between No-Sag's triumvirate came to light, and almost a year after her last pay increase. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 315, 329 (7th Cir. 2002) (stating that the issue is not the employee's past performance, but whether the

---

[4] The flexible *McDonnell Douglas* analysis permits the Court to simultaneously review the facts going to the second element of the *prima facie* case and to pretext, as the evidence for each often intertwines, "[b]ut the *prima facie* case is the condition precedent to the pretext analysis." *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002.); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347.

employee was performing well at the time of the adverse employment action). Overall, this modest evidence of satisfactory performance is more than counter-balanced by the fact that at the time of her termination, Corporate Human Resources viewed the management team at No-Sag as impaired, largely due to Hite and Harmon's long-standing personal relationship.[5]

Clearly, Hughey honestly believed that Hite and Harmon were undermining Schmitt, and his observation was followed by Bowers, who saw Harmon as a prime contributor to No-Sag's dysfunctional management team. Indeed, Harmon can hardly contest these points, given that she was the one who essentially sounded the alarm with her call to Gorham. Ultimately, of course, Bowers thought it risky to keep Harmon, concluding only that she might be salvaged under a strict "last chance opportunity." Harmon equates this suggested reprieve as vindication, or at least some sort of evidence of satisfactory performance. The problem with Harmon's argument is that Leggett's management team to whom Bowers was reporting is not required to take risks; stated another way, Leggett is not legally required to keep a potential bad apple in its barrel. *Cf. Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989) ("An employer can set whatever performance standards [it] wants, provided they are not a mask for discrimination on forbidden grounds such as [gender]. . . . [It] can . . . throw away the [square] peg when it doesn't

---

[5] Harmon alleges her job performance did not become an issue until Schmitt was denied the promotion, causing him to become negative not just towards Harmon, but others. She contends that all of her negative performance evaluations (i.e., Hughey's investigation and Bowers's Recommended Action Plan) evolved from "Schmitt controlled information." (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 9.) This seeming "cat's paw" argument, *see Shager v. Upjohn*, 913 F.2d 398, 405 (7th Cir. 1990), fails because she never produces evidence of Schmitt's animus or whether it truly influenced the corporate human resource department. Moreover, the investigation of the situation led the ultimate decision-makers to conclude, apart from Schmitt's input, that Harmon should be terminated. *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696 (7th Cir. 2005) (quoting *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 2001). ("[W]hen the causal relationship between the subordinate's illicit motive and the employer's ultimate decision is broken, and the ultimate decision is clearly made on an independent and a legally permissive basis, the bias of the subordinate is not relevant.") Finally, to hear Harmon tell it, Schmitt was negative towards both male and female employees, and therefore his alleged animus, if any, was not gender-based. *Holman v. Indiana*, 211 F.3d 399, 405 (7th Cir. 2000) (because supervisor harassed male and female employees equally, plaintiffs could not claim gender discrimination).

fit [into the round hole."]).

Harmon also fails to establish the fourth element of her *prima facie* case–that similarly-situated employees who were not members of her protected class were treated more favorably than her. In fact, she never points to any Leggett employee who was similarly situated for purposes of her Title VII claim. Instead, Harmon argues that the fourth element of the *McDonnell Douglas* methodology should not apply because there never could be a comparable employee, given that her termination was done to mask Leggett's discriminatory animus towards Hite.

Harmon cites no cases to support her theory that the fourth element is inapplicable here, but even if *McDonnell Douglas* does not apply, summary judgement is still appropriate. *Walker v. Abbott Labs.*, 416 F.3d 641, 645 (7th Cir. 2005) ("The [*McDonnell-Douglas*] formula has its place but does not displace the general standards for summary judgment."). Harmon provides no evidence of any discriminatory cover-up; instead, she boldly, and incorrectly, states that "it is not for [her] to justify illogical tactics upon the behalf of Leggett." (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 11.) *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999). ("Once a motion has been filed for summary judgment, the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial.") There is simply no evidence that Harmon was fired for any reason other than the dysfunctional relationship among the management team, and even if the management mess at No-Sag was actually Schmitt's fault (and Harmon provides no evidence on the point), an undeserved firing does not, as we shall see, necessarily equal a discriminatory one.

Finally, even if Harmon established a *prima facie* case, her discrimination claim still fails

as she is unable to demonstrate pretext. Leggett has provided a legitimate, nondiscriminatory reason for Harmon's termination–her conflict with her superior created a dysfunctional management team. It is now Harmon's burden to demonstrate that that reason is a lie. In that regard, the focus of a pretext inquiry is on "whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000); *Guerrero v. Ashcroft*, 253 F.3d 309, 314 (7th Cir. 2001) ("[W]e are mindful that we are not a super-personnel board . . . and that we may not punish an employer for choices that constitute business decisions alone, no matter how unwise or mistaken they may seem to us.")

Here, Harmon does not produce any evidence showing, or that would allow a jury to infer, that she was fired for any reason other than the perceived and honestly held belief among Leggett management that the No-Sag management team had fallen apart and that she was a significant part of the problem. *Stewart*, 207 F.3d at 378. At most, Harmon speculates that Schmitt managed to get her fired to cover up his actions against Hite. (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 10) Speculation is not good enough. *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir. 2001) (mere speculation that boss developed discriminatory animus towards an insubordinate female is not enough to demonstrate pretext).

Accordingly, summary judgment must be granted on Harmon's Title VII claim.

### B. Harmon's Equal Pay Act Claim Fails

To establish wage discrimination under the Equal Pay Act, a plaintiff must show: "(1)

higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998). To determine if work is equal, the crucial inquiry is "whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical." *Fallon v. Ill.*, 882 F.2d 1206, 1209 (7th Cir. 1989) (citations and quotation marks omitted). Once the plaintiff establishes a common core, "the court must ask whether any additional tasks make the jobs 'substantially different.'" *Cullen v. Ind. Univ. Bd. of Tr.*, 338 F.3d 693, 698 (7th Cir. 2003). The focal point of the Equal Pay Act is actual tasks, not job descriptions. *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

Harmon contends that there are male human resources managers at other Leggett facilities who performed the same common core of tasks under similar conditions as she, but who were paid more. However, the only evidence she produces in support of this allegation is her own conclusory and non-specific affidavit. (*See* Aff. of Monica Harmon ¶¶ 7, 9-14.) *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001) (uncorroborated, conclusory statements insufficient to withstand summary judgment); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") Because Harmon never points to any specific individual at any other Leggett facility who performed her common core of tasks yet

12

was paid more, no reasonable jury could return a verdict in her favor.[6] *Walker v. Abbott Labs.*, 416 F.3d 641, 645 (7th Cir. 2005). Therefore, Leggett's motion for summary judgment on this claim will be granted.

## V. CONCLUSION

For the reasons given above, Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter a judgment in favor of Defendant and against Plaintiff.[7]

Enter for this 12th day of October 2005.

S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge

---

[6] In her deposition, Harmon testified that Hite was a valid comparison for purposes of her Equal Pay Act claim. (Harmon Dep. 113.) In her brief, however, Harmon seems to abandon this theory, conceding that Hite, "as a matter of law, may not be performing equal work." (Pl.'s Br. in Resp. to Def.'s Mot. to Summ. J. 11.)
Regardless, when using Hite as a basis of comparison, Harmon's Equal Pay Act claim fails on the second prong, as Harmon and Hite did not share a common core of tasks. Their jobs required varied skills involving fundamentally different "experience, training, education and ability." 29 C.F.R. § 1620.15(a). Stated more simply, as Manufacturing Manager, Hite needed specific manufacturing and engineering experience and training that was not required of Harmon as Personnel Manager.
Additionally, as noted in Part II *supra*, they had substantially different responsibilities.

[7] Also pending is Leggett's motion to strike Harmon's affidavit. (Docket # 31.) Since Harmon loses even if we consider her affidavit, the motion is DENIED as MOOT.